# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JAMES DEMUS | ) | |
| | ) | |
| Plaintiff, | ) | 15-cv-11741 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| JEROME NICKERSON, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff James Demus, an inmate at Stateville Correctional Center ("Stateville"), has brought this action under 42 U.S.C. § 1983 against Lieutenant Jerome Nickerson, alleging that he violated the Eighth Amendment's prohibition on cruel and unusual punishment by being deliberately indifferent to Demus's medical conditions. Nickerson has filed a motion for summary judgment. For the reasons provided below, Nickerson's motion is granted.

## Factual Background[1]

During all relevant times, Demus was incarcerated at Stateville, and Nickerson was a Lieutenant at Stateville's Northern Reception Center. Def.'s LR 56.1 Stmt. ("SOF") ¶¶ 3–4, ECF No. 47. Demus was prescribed an asthma inhaler and blood-pressure medication while at Stateville. *Id.* ¶ 5.

Demus lost his inhaler during an altercation with another inmate on June 4, 2015. *Id.* ¶¶ 6–7. Because of the altercation, Demus was taken to segregation. *Id.* ¶ 8. He was unable to retrieve his blood-pressure medication from his cell, and it was not delivered to him in segregation. *Id.*

---

[1] The following facts are undisputed or deemed admitted except where otherwise noted.

¶¶ 8–9. Demus complained to several correctional officers (not Nickerson) about the loss of his inhaler and medication during this time. *Id.* ¶¶ 7, 9.

Demus first informed Nickerson of the loss of his inhaler and medication on June 14, 2015, before Nickerson was to transport Demus to court. *Id.* ¶ 10. That same day, Nickerson took Demus to the health care unit ("HCU"). *Id.* ¶¶ 11, 27. There, the nurse told Demus that, because he did not have his old asthma pump, he had to file a grievance to receive a replacement. *Id.* ¶ 12.

Stateville's grievance process consists of several steps. *See id.* ¶¶ 13–17. First, an inmate must attempt to resolve grievances informally through his grievance counselor. *Id.* ¶ 14. If the grievance remains unresolved, the inmate may file a written grievance on a grievance form within sixty days of the underlying incident. *Id.* A Grievance Officer then reviews the grievance, investigates, and generates a report containing the findings of the investigation and any recommendation for relief. *Id.* ¶ 16. The grievance and the report are forwarded to the Warden's office for review and signature; a copy containing the Warden's final decision is then sent back to the inmate. *Id.*

If the grievance still remains unresolved, the inmate may appeal in writing to the Director of the Illinois Department of Corrections ("IDOC"). *Id.* ¶¶ 17. IDOC's Administrative Review Board reviews the appeal and submits a written report of its findings and recommendations to the Director's office. The Director's office then makes a final determination that is sent back to the inmate. *Id.*

Demus filed a grievance on July 5, 2015, stating that he had lost his inhaler during a fight. *Id.* ¶ 18; Def.'s SOF, Ex. D, Grievance Records at 5, ECF No. 47-4. Demus further stated that Nickerson had witnessed that he had an inhaler during the fight and later sent him to the HCU on

2

June 15, 2015.[2]  Grievance Records at 5.  Demus's grievance counselor issued a response to this grievance on July 31, 2015, stating, "A renewal script has been written and a[n] inhaler will be given to the grievant."  *Id.*  On August 1, 2015, Demus received a new inhaler.  Def.'s SOF ¶ 23.

Demus submitted another grievance on October 1, 2015, because he still had not received his blood-pressure medication.  *Id.* ¶ 19.  In this second grievance, Demus indicated that he had "filed a grievance 7-5-15 about [his] asthma pump and blood pressure medication."  Grievance Records at 6.  Demus received his medication on October 15, 2015.  Def.'s SOF ¶ 23.  His grievance counselor wrote an initial response to the grievance on November 4, 2015, stating that Demus's request had been sent to the HCU and that a grievance officer would soon respond.  Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 19.  Demus received a formal response on December 9, 2015, recommending "[n]o action as grievant appear[ed] to be receiving appropriate medical care."  *Id.* ¶ 20; Grievance Records at 7.

Demus never appealed any grievance decision.  Def.'s SOF ¶¶ 18–20, 24.  He stated in his deposition that he never appealed IDOC's response to the second grievance because he was "tired of the paperwork."  Def.'s SOF, Ex. B, Demus Dep. at 74:6–10, ECF. No. 47-2.  On December 28, 2015, Demus filed this lawsuit.  *See* Compl., ECF No. 1.

The parties dispute whether Nickerson knew about the July grievance before this lawsuit was filed.  *See* Def.'s SOF ¶ 22; Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 22.  The parties also dispute whether Demus complained to Nickerson about the loss of his inhaler or medication other than on June 14, 2015.  Def.'s SOF ¶ 25; Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 25.  Nickerson testified that he had not seen the July grievance before his deposition.  Def.'s SOF ¶ 22; *id.* Ex. C, Nickerson Dep. at 51:2–10, ECF No. 47-3.  By contrast, Demus asserts, he "testified at his deposition that he told Defendant

---

[2]  Elsewhere, Demus agrees that this actually occurred on June 14, 2015.  *See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 10, 25, 27, ECF No. 62.

3

Nickerson of his July 5, 2015 grievance sometime after he filed it when being transported to court as he went to court at least once a month." Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 25. Specifically, when Demus was asked, "Do you know whether or not Lieutenant Nickerson saw these grievances at all?" he responded: "I told him about the grievance because I went to court. I told you I stayed there eight months. He took me to court every month." Demus Dep. at 77:20–23.

**Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Shell v. Smith*, 789 F.3d 715, 717 (7th Cir. 2015). To survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). In reviewing a motion for summary judgment, the Court gives the nonmoving party "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). The Court must not make credibility determinations or weigh conflicting evidence. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010).

Moreover, Rule 56 requires the district court to grant a motion for summary judgment after discovery "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of establishing that there is no genuine issue of material fact. *See id.* Once the moving party has

sufficiently demonstrated the absence of a genuine issue of material fact, the nonmoving party must then set forth specific facts showing that there are disputed material facts that must be decided at trial. *See id.* at 321–22.

## Analysis

Demus claims that Nickerson acted with deliberate indifference to his medical needs by failing to provide him with an inhaler and blood-pressure medication and by allowing him to be transported to court without those items after July 5, 2015. In seeking summary judgment, Nickerson argues that Demus failed to exhaust his administrative remedies, failed to describe his claims adequately in his grievances, and failed to present evidence to establish that Nickerson was aware of and ignored Demus's serious medical needs.

## I.    Exhaustion of Administrative Remedies

### A. Failure to Appeal

Nickerson first argues that Demus failed to exhaust his claims through the IDOC grievance process, as required by the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81, 84 (2006). Failure to exhaust is an affirmative defense on which the defendant bears the burden of proof. *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). The exhaustion requirement's main purposes are to allow an administrative agency to correct its own errors before involving the courts and to promote efficiency. *Woodford*, 548 U.S. at 89; *see also Turley*, 729 F.3d at 650 ("[O]nce a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement."). To meet the exhaustion requirement, an inmate must take all the steps required by the institution's grievance system. *See Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004).

5

Nickerson argues that Demus should have appealed the grievance decisions he received. But IDOC's grievance procedures did not obligate Demus to appeal *favorable* decisions. *See* Def.'s SOF ¶¶ 14, 17; ILL. ADMIN. CODE tit. 20, § 504.850(a) ("If . . . the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal. . . ."); *see also Martin v. Cook Cty. Dep't of Corr.*, No. 10 C 2162, 2013 WL 1181491, at *5 (N.D. Ill. Mar. 20, 2013) (concluding that an inmate was not required to appeal a response referring his grievance to dental services where "[a] referral for dental services was exactly what Plaintiff wanted"). A grievance that leads to a favorable response satisfies the exhaustion requirement's purpose of allowing time for corrective action. *See Turley*, 729 F.3d at 650. Moreover, appealing a favorable response runs counter to the purpose of promoting efficiency.

Here, Demus complied with the grievance process and obtained favorable results before filing suit. Within thirty days of submitting the July grievance, Demus received a response from the prison informing him that "a renewal script ha[d] been written"; he received an inhaler soon thereafter. Def.'s SOF ¶¶ 18, 23; Grievance Records at 5. Then, within thirty days of filing his October grievance, Demus received his blood-pressure medication and a grievance response stating that no further action was necessary. Def.'s SOF ¶¶ 19, 23; Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 19; Grievance Records at 7. He was entitled to rely on the favorable responses instead of filing pointless appeals. *See Swisher v. Porter Cty. Sheriff's Dep't*, 769 F.3d 553, 555 (7th Cir. 2014) (holding that an inmate was entitled to assume he did not have to file a written grievance where told by officials not to do so because his problem was being resolved); *Martin*, 2013 WL 1181491, at *5. Even the regulations did not require Demus to appeal in this circumstance. *See* ILL. ADMIN. CODE tit. 20, § 504.850(a).

The cases cited by Nickerson are inapposite. In *Massey v. Helman*, the inmate completely failed to seek administrative relief before filing suit. *See* 259 F.3d 641, 645–46 (7th Cir. 2001). And in *Booth v. Churner*, the Supreme Court explained that an inmate cannot forgo available administrative remedies simply because they do not provide the specific relief (*i.e.*, damages) that the inmate wants. 532 U.S. 731, 736–41 (2001). In other words, in both cases, the inmates attempted to "skip the administrative process." *Id.* at 741. Here, Demus, rather than "skip[ping] the administrative process," actually pursued it to a resolution. There was no reason for him to go on to appeal a favorable outcome.

Nickerson argues, however, that this logic does not hold true as to Demus's need for blood-pressure medicine, which he requested in the July grievance but did not receive until after filing his October grievance. True, this request was not resolved within the thirty-day appeal period after the July grievance response. But the statement that "a renewal script ha[d] been written" could have reasonably led Demus to believe he did not need to appeal following the July grievance response. *See Swisher*, 769 F.3d at 555. Moreover, officials did not respond to the October grievance by stating that it was untimely or otherwise procedurally improper; rather, they addressed the issue on the merits, and Demus soon received his medication. This sequence of events served the purposes of the exhaustion requirement, as officials were given notice of the problem and an opportunity to address it. *See Turley*, 729 F.3d at 650.

**B. Lack of Specificity**

Nickerson alternatively argues that, even if Demus exhausted the appeal process, his grievances did not adequately notify Nickerson of the allegations against him. IDOC's grievance procedures require an offender to provide "factual details regarding each aspect of the offender's

7

complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." ILL. ADMIN. CODE tit. 20, § 504.810(c).

Nickerson does not explain how Demus allegedly failed to meet this standard. His grievances explained that he had lost his inhaler and blood-pressure medication, when these events occurred, and where. The July grievance specifically stated that Nickerson was present for the altercation in which Demus lost his inhaler. *See* Grievance Records at 5. The October grievance referred back to the July grievance, and explained that some of the conditions described in that grievance were ongoing. *See id.* at 6. What is more, Stateville officials addressed Demus's grievances by providing his inhaler and blood-pressure medication, and there is no evidence of any procedural objection to the grievances' specificity. "Where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds[,] the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).

As such, Demus's grievances gave the prison and Nickerson a fair opportunity to respond, and Nickerson is not entitled to summary judgment on non-exhaustion grounds.

## II. Deliberate Indifference

Nickerson next argues that Demus cannot prove the subjective element of his deliberate indifference claim. To establish this element, an inmate must show that a prison official was aware of the inmate's serious medical needs, yet consciously disregarded a significant risk to the inmate's health or safety. *Grieveson v. Anderson*, 538 F.3d 763, 775 (7th Cir. 2008). "[A] reasonable jury can infer a defendant's subjective deliberate indifference based upon evidence that the defendant ignored a request for treatment, substantially departed from accepted professional standards[,] . . . persisted in an ineffective course of treatment, or inexplicably delayed treatment."

8

*Williams v. Ghosh*, No. 10 C 162, 2017 WL 3780315, at *7 (N.D. Ill. Aug. 31, 2017) (citing *Petties v. Carter*, 836 F.3d 722, 729–31 (7th Cir. 2016) (en banc)).

Nickerson correctly submits that as a correctional officer, he "is permitted to rely on the medical expertise of [HCU] Staff." Def.'s Mem. Supp. Mot. Summ. J. at 8, ECF No. 48. Nonmedical prison officials, such as Nickerson, may defer to the expertise of medical personnel. *See, e.g.*, *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019); *Greeno v. Daley*, 414 F.3d 645, 655–56 (7th Cir. 2005). However, nonmedical officials can be liable for deliberate indifference when they know or have reason to believe that doctors are mistreating or ignoring a prisoner, yet do nothing in response. *See, e.g.*, *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011); *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008). That said, "[m]ere negligence in failing to detect and prevent . . . misconduct" is insufficient. *Arnett*, 658 F.3d at 755.

Demus fails to point to any evidence that Nickerson acted with deliberate indifference. When Demus first told Nickerson that he needed an inhaler and blood-pressure medication, Nickerson brought Demus to the HCU that same day.[3] Def.'s SOF ¶¶ 10–11, 27. Nickerson was not required to do more at that time. *See Greeno*, 414 F.3d at 656 ("[W]e can see no deliberate indifference given that [the defendant] investigated the complaints and referred them to the medical providers who could be expected to address [the plaintiff's] concerns.").

Demus also argues that he informed Nickerson of his ongoing needs sometime after he filed the July grievance, but that Nickerson allowed him to be transported to court rather than

---

[3] Although Demus's July grievance indicates that Nickerson was present for the altercation in which he lost his inhaler—an event that occurred two weeks before Nickerson took Demus to the HCU, *see* Grievance Records at 5; Def.'s SOF ¶¶ 6–10—Demus does not contend that Nickerson was deliberately indifferent for failing to take him to the HCU prior to June 14, 2015. Instead, he focuses solely on whether Nickerson acted with deliberate indifference by continuing to transport him to court after he filed grievances about the delay in medical care, beginning in July 2015. *See* Pl.'s Resp. Opp. Mot. Summ. J. at 4–5, ECF No. 61.

9

helping him obtain an inhaler or medication. The only evidence supporting Demus's argument, however, is his statement that he "told Nickerson about the grievance because [he] went to court." Demus Dep. at 77:20–21. This statement is devoid of any useful facts; it does not elucidate when the parties went to court, whether the exchange occurred before or after transport, what (if anything) Demus told Nickerson about his grievance, or even which grievance the parties discussed. As such, Demus has not demonstrated that he sufficiently put Nickerson on notice of his continuing medical needs or any problems he may have been having with obtaining relief. *See Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) ("The plaintiff still has the burden of demonstrating that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to an excessive risk to inmate health or safety.") (internal quotation marks omitted). Furthermore, to the extent that Nickerson had notice of an outstanding problem, the record contains no evidence of his response or lack thereof. On this record, no reasonable jury could find that Nickerson acted with deliberate indifference to Demus's medical needs.

## Conclusion

For the reasons stated herein, the Court grants Nickerson's motion for summary judgment. Judgment will be entered in favor of Defendant. This case is hereby terminated.

**IT IS SO ORDERED.**      ENTERED 4/30/19

**John Z. Lee**
**United States District Judge**